140 So.2d 101 (1962)
RAINBOW POULTRY COMPANY and General Guaranty Insurance Company, Petitioners,
v.
RITTER RENTAL SYSTEM, INC., Metropolitan Insurance Company, and Florida Industrial Commission, Respondents.
No. 31389.
Supreme Court of Florida.
March 28, 1962.
Rehearing Denied May 7, 1962.
*102 Welsh, Cornell, Pyszka & Carlton and Gerald M. Walsh, Miami, for petitioners.
McDonald & McDonald, Miami, Burnis T. Coleman and Patrick H. Mears, Tallahassee, for respondents.
DREW, Justice
These proceedings involve the question of general and special employers in workmen's compensation cases, a subject described many years ago by Justice Cardozo as "beset with distinctions so delicate that chaos is the consequence."[1] In at least four other cases, three decided by this Court and one by the District Court of Appeal, First District,[2] this perplexing problem has been thoroughly discussed and certain formulas used in attempting to determine employer liability have been restated and analysed.
While this controversy is between the carriers and does not affect the rights of the employee, we deem it appropriate to relate the basic facts out of which the controversy has arisen.
The employee Neal was hired by Ritter Rental System, Inc., hereafter called Ritter, to drive a tractor trailer truck with a load of fruit from Miami to the City of Chicago where, under arrangements previously made between Ritter and Rainbow Poultry Company, hereafter called Rainbow, he was to obtain a load of meat and return it to Rainbow in the City of Miami. According to Neal, he was to receive compensation on the basis of "20% of the gross".
Because of I.C.C. regulations, Ritter was not authorized as a carrier to transport the meat from Chicago to Miami. To comply with these regulations an arrangement was made by Ritter with Rainbow to lease the truck and driver after it had arrived in Chicago for the return trip to Miami. This lease, executed by Ritter and Rainbow, was given to Neal before he left Miami.[3] Under the terms of the lease, Rainbow specifically agreed "to cause such equipment to be operated solely by a safe, careful, licensed driver selected by and under the sole supervision, direction, control and [sic] employee" of the lessee. On arrival in Chicago, Neal picked up the load of meat and, while nearing its destination in Miami, became involved in an accident with the truck in which he sustained serious injuries. *103 Rainbow's carrier recognized the claim as compensable, arranged for hospitalization and doctor's treatments and began the payment of compensation. Payments were later discontinued but, upon the filing of a claim against Rainbow, were resumed and have thereafter continued. The controversy is now between the carriers for Ritter and Rainbow for the purpose of determining which was the employer of Neal at the time of his injury and therefore liable for benefits due him which arose out of the admittedly compensable accident.
The deputy determined that Ritter was the employer of Neal. The full commission held that the deputy commissioner erred as a matter of law in holding Ritter to be the employer. The keystone of its conclusion  as we read and construe its order  is the contractual relation between Rainbow and Ritter arising out of the lease agreement and the subsequent acceptance by the employee Neal of compensation for the return trip from Chicago to Miami.[4]
The full commission in its order transgressed its authority and made certain findings of fact which it had no power to do. We do not approve the reasons which it assigns for its judgment. We only agree with the conclusion reached by it that Rainbow was the employer of Neal as a matter of law under the circumstances revealed by the record and herein discussed.
In the Stuyvesant[5] case we confirmed the holding in the Berrier[6] case originally derived from Seaman Body Corporation v. Industrial Commission, 204 Wis. 157, 235 N.W. 433, that the main factors to be considered in determining the question of liability in cases of this kind was (1) a contract for hire, express or implied, between the employee and special employer; (2) the work being done at the time of the injury was essentially that of the special employer and (3) the power to control details of work in the special employer. We here approve and ratify this formula as a general principle in determining liability in such cases. Applying this formula to the instant case, we hold that, under the admitted and uncontroverted facts, Neal was Rainbow's employee because (1) the lease agreement made Neal Rainbow's employee as a matter of law; (2) the work which Neal was doing in driving the truck from Chicago to Miami hauling meat of Rainbow under a lease agreement was essentially being done for Rainbow and (3) Rainbow had the right of control in all essential respects under the lease agreement.
The record is not conclusive as to whether Neal knew that he was the employee of Rainbow under the terms of the lease. This becomes unimportant, however, in view of the later ratification and approval of the employment as a matter of law when Neal accepted payment for his wages covering the critical period. If any doubt remained as to the consensual relation of employer and employee, this subsequent ratification removed that doubt as a matter of law.
The rights and responsibilities of the carriers involved in these proceedings are the same, no more, no less, than that of Rainbow and Ritter under the express provisions of the Workmen's Compensation Act.[7] In this connection, and by way of observation, Rainbow would be estopped as between the parties from questioning the fact that Neal at the critical period was its employee, and Neal would be estopped, particularly after accepting compensation from Rainbow, to claim he was Ritter's employee when injured.
In fine, we are not confronted in this case with the question of whether the full *104 commission or this Court is substituting its opinions on a factual situation for that of the deputy commissioner or is setting aside findings of such deputy which are supported by competent, substantial evidence comporting with logic and reason. The deputy commissioner did make findings of fact but these findings of fact became inconsequential because of their lack of materiality in determining the ultimate question, which, under the express and undisputed provisions of the lease, and the subsequent ratification by Neal, became purely a question of law. This is a classic example of the commissioner misconstruing the legal effect of the evidence.
Certiorari denied.
ROBERTS, C.J., THOMAS and O'CONNELL, JJ., and MASON, Circuit Judge, concur.
NOTES
[1] See Stuyvesant Corp. v. Waterhouse, Fla. 1954, 74 So.2d 554 (text page 557) citing Cardozo, A. Ministry of Justice, (1921) 35 Harvard Law Review 113, 121; Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614, 620.
[2] Berrier v. Associated Indemnity Co., 1939, 142 Fla. 351, 196 So. 188; Naranja Rock Co. v. Dawal Farms, Inc., Fla. 1954, 74 So.2d 282; Stuyvesant Corp. v. Waterhouse, supra note 1; Maige v. Cannon, Fla.App. 1957, 98 So.2d 399.
[3] The original lease was removed from the truck after the wreck by Mr. Ritter.
[4] While Neal says he thought Ritter was to pay his wages, he actually received his compensation for the return trip from Rainbow. Neal endorsed and cashed the check from Rainbow payable to his order a few days after the accident. This check showed total wages of $80.00, less Social Security of $2.40 and withholding of $4.30.
[5] Supra, note 1.
[6] Supra, note 2.
[7] Sec. 440.41, Florida Statutes 1959, F.S.A.